## BAKER vs. HOLLOBAUGH.

A verbal agreement for a division of public land, when either party should enter it, but indefinite as to time, where no trust is created between the parties, and there are no peculiar circumstances that would make it unconscionable for either party to resist a specific performance, is not entitled to favorable consideration, because clearly against public policy.

The Court, in the exercise of an equitable discretion to grant or refuse the specific performance of contracts, should refuse to enforce a voluntary agreement resting in parol, for the sale of land, where the agreement is not clearly and distinctly proved; or where the complainant fails to allege any sufficient equitable circumstances of fraud in the defendant, inducing hardship and loss to himself, unless the agreement be specifically performed.

It would not be an infringement of the salutary policy of the statute of frauds, to decree a specific performance of a parol agreement for the sale of land, as between the parties to the agreement, to the extent of the admission, in the answer, though differing in some degree from that charged in the bill, where the statute of frauds is not relied upon as a bar to the relief.

*Appeal from Searcy Circuit Court in Chancery.*

The Hon. B. H. NEELY, Circuit Judge.

S. H. HEMPSTEAD, for the appellant. 1. The agreement between the parties to the conditional line between them, was made when the lands belonged to the United States, and so the agreement was utterly void. (1 *Scam.* 114, 170, 396, 472; 5 *Blackf.* 64; 1 *How. Miss. R.* 150; 5 *Eng.* 560; *Floyd vs. Ricks*, 14 *Ark.*) No agreement as to the public lands can be binding so as to affect the legal title of the proprietor.

2. The establishment of a boundary by partition, or otherwise, is within the statute of frauds, and to be valid must be reduced to writing. *Dig.* 540; 12 *S. & M.* 431; *Roberts on Frauds* 282.

3. But if a disputed boundary may be established by parol, it must be by those who are owners of the soil when the agreement is made. 2 *Caines* 198; 12 *Wend.* 130; 9 *John.* 69; 2 *Gilman* 419; 4 *Wheaton* 513; 6 *Wend.* 469.

4. It may be insisted on in the answer, that an agreement relating to lands is not in writing, without formally pleading the statute of frauds. 2 *Paige* 178; 2 *Sand. Ch. R.* 144; 6 *Eng.* 411.

And where a parol agreement is alleged in the bill, and a different one admitted in the answer, no decree can be had without amending the bill. 2 *Edw. Ch. R.* 445; 6 *John.* 559; 1 *John. Ch. R.* 146; 12 *Ves. Jr.* 78.

W. BYERS, for the appellee, argued this cause upon the answer of the defendant, which he contended was evasive, and admitted all the material allegations of the bill; and that, upon the facts, the complainant was entitled to the decree.

Mr. Chief Justice WATKINS delivered the opinion of the Court.

The appellee, Hollobaugh, exhibited his bill of complaint in the Searcy Circuit Court, against Baker, the object of which was to enforce the specific performance of a parol agreement for the sale of land, and to settle a boundary alleged to have been agreed upon, in the division of the tract between them; and obtained a decree in accordance with the prayer of the bill.

In considering this case, we have allowed to the complainant in the Court below, the benefit of all just exceptions which might have been taken there to the answer of the defendant for insufficiency or evasion, by supposing to be true every material allegation of fact, charged in the bill, apparently within the knowledge of the defendant, and not specifically denied or admitted in the answer.

Without detailing the allegations in the pleadings, the substance of the issues may be understood from the statement of the case which follows: The complainant was the owner of the west-half, and the defendant the owner of the east-half, of the same quarter

section, at the time of filing the bill in February, 1853. The tract owned by Baker had been entered by him, at the United States Land Office, in February, 1846, and he also owned the forty acre tract immediately south of his half quarter. The complainant had entered his eighty acre tract, in January, 1849 ; adjoining and south of that lies the forty acre tract, which is the subject of the present controversy. Each party resided upon his half of the quarter section referred to, upon which improvements had been made some years before either of the tracts was entered, and while they were public land. The complainant bought the improvement on the west-half from one Kesner, and which had been originally made and occupied by one Dean. A branch running from north to south, along the open line divided the quarter section nearly equally between the owners of it ; but on reaching the south boundary of the tract, the stream turned its course towards the west, so as to run somewhat diagonally across the forty acre tract in controversy, dividing it so as to leave the larger portion on the west side of the branch. A road ran in an east and west direction across this tract, dividing it nearly equally. Baker had an improvement upon it, on the east side of the branch, and the clearing of the complainant extended over upon it, on the west side, to the extent of about ten acres, the enclosure of his field coming down within a short distance of the road before mentioned.

The complainant represents, that before he purchased the improvement of Kesner, there had been an agreement between Baker and those occupying the west-half of that quarter, that the branch described should be the boundary between their respective improvements, and that the same branch, in its course through the adjoining forty acre tract, should continue to be the boundary between their improvements thereon, and that whoever entered that tract, should allow to the other, refunding his due proportion of the purchase money, the part of it lying on the east or west side of the branch, as the case might be, so as to include their respective improvements. On the 6th of February, 1852, the de-

fendant, Baker, without previously notifying the complainant, entered the forty acre tract in question; and, during the course of that year, the complainant tendered to him an amount of money sufficient to pay for the quantity of land supposed to lie on the west side of the branch, asked to have it ascertained by survey, and for conveyance from the defendant, which was refused. Baker, in his answer, denies that there was ever any such agreement, as that charged in the bill, between him and the complainant, or any other person, but admits that while the lands belonged to the government, there was a verbal understanding between him and the former settlers on the west-half of the quarter section, to this effect: that the branch should be the division line as far down as the road. Independent of the fact, that the agreement charged is not satisfactorily proven, there is another objection to the existence of its being a ground of relief. It was made concerning public land, for aught that appears in market, and subject to entry by any person, who chose to apply for it, and between parties who could not claim any thing more than a temporary occupancy, which was the extent of their rights; and regarding it as a settlement of boundaries, it was only for the time being, and did not have the effect of enlarging their title. If the parol agreement had contemplated the immediate or future purchase, when in market, of the tract in controversy, and it had been so acted upon as to make it unconscionable for one party to resist a specific performance sought by the other, relief might be had under peculiar circumstances, as intimated in *Cain vs. Leslie*, at the present term; because there is no reason why a trust may not arise under a contract having direct reference to the purchase of land from the United States, or from any third person. But here the alleged understanding about the prospective entry and division for their mutual accommodation of the forty acre tract, was vague and indefinite as to time, and it remained unacted on by the parties for several years, during all which time the title might have been acquired from the government, and the agreement consummated. The declared policy and design of the

United States, is to bring the public domain into market, and fa-cilitate the sale of it; giving, it may be, a preference to actual settlers, where they choose to avail themselves of it on the terms prescribed; and that also, in order to encourage immigration, is not only the policy of the State, but she has a vital interest in being able to raise a revenue by taxation from lands alienated by the general government. So far as the long continued occupancy and appropriation to themselves by these parties of public land, was calculated to delay the sale of it, or to deter other persons from purchasing, any mere parol agreement respecting it would not be entitled to favorable consideration, because clearly against public policy.

The complainant also insisted upon having a specific performance upon other grounds, which may be briefly stated. It appears that the defendant, a few days after he entered the forty acre tract, called to see the complainant at his house, and told him in substance, that in making the entry, he had been compelled to take a part of his improvement, but did not intend to deprive him of it, and would sell it to him, he paying for the same a due proportion of the purchase money, at Congress price. Now the complainant alleges that, during the conversation on that occasion, the defendant agreed to let him have all that part of the tract lying on the west side of the branch, upon his verbal assurance not to fence up the wood land during his life time, and a day was appointed to have it run off and measured by a surveyor, and that on the faith of this agreement, he made some additional improvements. A material part of these allegations is denied by the defendant, who declaring his willingness to abide by the agreement, which was made, admitted that, on the occasion referred to, he did verbally agree with the complainant to sell him the improved land and the wood land to the branch, and as far down as the road, and no farther, with a proviso that he should never fence up the wood land, and he did not admit the making of any improvements beyond the resetting of a fence.

There are two grounds upon which, taken together, the court

below, in the exercise of an equitable discretion, to grant or re-
fuse the specific performance of contracts, should have denied the
relief sought in this particular case. The agreement itself, as
claimed by the complainant, and upon which the decree is based,
was not against the denial of the answer, so clearly and distinctly
proved, as to entitle the complainant to a decree. Scarcely any
two of the witnesses understood it alike, or profess to have heard
the whole of the conversation. A short time afterwards, during
the spring of the same year, when the parties met by appoint-
ment to survey off the complainant's portion of the land, their
disagreement and mutual misunderstanding of the terms of the
agreement manifested itself. The complainant then seemed wil-
ling to accept the deed, which the defendant proposed to make
to him for the part west of the branch and down to the road, but
the next day when they met again to have the deed executed, he
refused it, and claimed all of the tract west of the branch.

The defendant, becoming the absolute owner of the land by
purchase from the government, his offer to sell a portion of it to
the complainant was voluntary, and the agreement resting in
parol, the complainant has failed to allege any sufficient equit-
able circumstances, of fraud in the defendant, inducing hardship
and loss to himself, unless specifically performed, so as to take it
out of the operation of the statute of frauds. The continued pos-
session of the complainant, to the extent of the agreement admit-
ted by the defendant, was lawful. The improvements made by
the complainant, after the conversation with the defendant, and
before they met to have his portion surveyed off, were compara-
tively unimportant, such as any tenant in possession might be
expected to make, and not ordinarily exceeding in value the use
of cultivated land.

It would, in our opinion, be no infringement of the salutary
policy of the statute of frauds, for the complainant to have a decree
for the specific performance of a parol agreement for the sale of
land, as between the parties to the agreement in full life, where
an agreement, though differing in some respects from that charged

in the bill, is admitted, and the statute is not relied upon as a bar to the relief; but, in such case, an amendment of the bill might be requisite.

The decree appealed from, will be reversed, and the cause remanded, with instructions to permit the complainant to amend his bill, and to decree in his favor, but at his costs, to the extent of the admission of the agreement contained in the answer, that portion of the tract to be surveyed, the quantity ascertained and paid for by the defendant, at the minimum government price, with interest, if he will accept such decree, and otherwise to dismiss the bill.