## WHATLEY VS. STRONG.

On a bill for the specific performance of a contract, the contract must be clearly and unequivocally established before a court of equity will decree its specific performance.   In this case, the testimony leaving it in doubt what the interest of the complainant was to be in the lands in reference to which the contract is alleged—that interest being uncertain, indefinable, unascertainable—the bill is dismissed.

*Appeal from Columbia Circuit Court in Chancery.*

Hon. JAMES K. YOUNG, Special Judge.

CARLETON and GARLAND & RANDOLPH, for appellant.

GALLAGHER, for appellee.

Mr. Justice Fairchild delivered the opinion of the Court.

By a bill preferred on the chancery side of the circuit court of Columbia county, Strong complained of Whatley, that he would not perform a contract which had been made between them in November, 1858, to the effect that Whatley should furnish Strong land warrants to be located by Strong, on lands in Arkansas, as he should think best, but in the name of What-

ley, and that each party should have an equal interest in the lands located. The bill charged that Whatley furnished to Strong, upon two different occasions, forty-nine land warrants, which Strong had located upon certain enumerated lands in Columbia county, in the name of Whatley, who had asserted a claim to their exclusive ownership in denial of Strong's right and interest to one-half the lands under the agreement, of which the bill prayed a specific performance.

The answer denies the agreement, alleges that the claim of the bill is barred by a settlement made between the parties, in which Strong charged, and was paid, for his services in locating the lands according to his own estimate of them, and demurs to the bill. It admits that Whatley furnished the land warrants, and that Strong located them as stated in the bill, with two unimportant modifications, but insisted that Strong, in locating them in the name of Whatley, located them for Whatley alone, and while in his employment as overseer, and in the charge of his business in Arkansas, Whatley being himself at the times of the locating, in Georgia, where he then resided.

Other matters are asserted in the bill as ancillary to, or explanatory of its main feature, as above depicted, and especially as to Whatley's giving his sister, Strong's wife, a quarter section, or three quarter sections of land; but this, and that part of the case touching the state of accounts between the parties, as affected by Strong's use of Whatley's negroes, by his working and incurring expenses upon his lands, by living from their proceeds, and by the settlement stated in the answer, and exhibited with it, need not be considered until it is ascertained whether any agreement was made between the parties on which to support a decree for specific performance. If this be answered in the affirmative, it may then be the subject of enquiry whether the agreement, that is taken to be established, be such as chancery will specifically perform, and if not illegal by the statute of frauds, whether it so commends itself to the discretion of a court of equity as to procure its enforcement,

and also, whether, if not enforced, as asked by the bill, the bill will be retained for an award of compensation to Strong for his location of the lands.

William J. Strong, a witness for the plaintiff, and his son, proves the contract as set forth in the bill, though his deposition and the bill do not agree upon the time when the agreement was made; the bill charging that it was made in November, 1852, and that it was repeated over at Alfred Harrell's in Chambers county, Alabama, after they had traveled one hundred and twenty-five miles in going on their way to Arkansas; while the witness deposes that the agreement was first made at the house of Harrell, or that he did not know of any previous contract between the parties. But, subject to this discrepancy, the bill and the deposition of William J. Strong relate one and the same narrative. The witness stated that when the agreement was made, himself, the parties, Alfred Harrell, and Mrs. Harrel were in the room.

Alfred Harrell states that Whatley gave land warrants to Strong to take to Arkansas and to locate, that Whatley agreed to buy other warrants and send them to Strong, to be located for Whatley; that he did not recollect that he heard Whatley say positively what interest Strong was to have in the lands located by him, but that he was to have an interest, and that Whatley said it would be worth more to him than any other arrangement he could make. And in a subsequent part of his deposition, Harrell said that there was no specific agreement, or contract, as to what Strong was to receive, entered into by the parties in his presence, but that it appeared to be left to Whatley's honor to do what was right.

Mrs. Mahala Harrel, wife of Alfred Harrell, deposed that upon Mrs. Strong being reluctant to go further towards Arkansas, Whatley proposed to her, in the presence of the witness and of the plaintiff, if she would go to Arkansas, to give her a half section of land, in addition to an interest which he was to give her husband in lands to be located in Arkansas by him, with warrants to be furnished by Whatley; and that he said it

would be greatly for their interest, and would enable them to settle their children comfortably. The witness understood that a contract or agreement had been made between Strong and Whatley about Whatley's furnishing Strong with land warrants to be located by him, that was likely to be broken up by Mrs. Strong's unwillingness to go to Arkansas, but she said she did not know what the contract was.

The witness, Lee, said, in his deposition, that Whatley told him that Strong's interest in the lands he had entered would make him easy the rest of his life.

Elizabeth M. Huey, a daughter of the plaintiff, says, that at Alfred Harrell's Whatley told the plaintiff that if he would go on to Arkansas, he would be furnished with land warrants to buy lands, and he would give him half of the lands for laying the warrants, and that before they left Harrell's, Whatley gave her father a number of land warrants.

This is all the testimony in support of the agreement.

In favor of Whatley's denial of the agreement alleged, all of the witnesses on both sides say that Strong uniformly spoke of the warrants and locations, and lands, as belonging to Whatley: no claim or assertion of any interest in them is shown to have been made by Strong; letters of Strong are produced, in which the labor and trouble of the location are mentioned as performed and incurred for Whatley, and the lands located mentioned as his property. Exhibits A and B, of the answer, in the handwriting of Strong, contain charges for laying land warrants; and William A. Whatley, a son of the defendant, says that Strong entered the lands as the overseer and agent of Whatley; that the land warrants at Harrell's were handed to himself to locate, but that when he reached Arkansas he was sick, and got Strong to locate them; that he was much of the time at Strong's when Strong was attending to the business of his father in Arkansas, and never heard him claim any interest in the land till the commencement of this suit, and that he had often heard Strong say that he made the locations for past favors received of Whatley.

The depositions of Alfred Harrell, Mahala Harrell, William J. Strong, and Elizabeth Huey, evidently attempt to detail the same conversation. William J. Strong treats it as the original agreement between Strong and Whatley, and as a positive undertaking on the part of the latter to allow Strong an undivided half interest in the lands to be located for their location: while Mahala Harrell refers to the conversation as an acknowledgment by Whatley, that Strong was to have some interest in the lands to be located in Arkansas. She did not know, or did not state what that interest was, and it is not to be inferred that it was this interest solely that was to enable Strong and wife to settle their children comfortably. The removal to Arkansas, with all its consequences, was to have this effect, from which Whatley urged Mrs. Strong that it would be greatly for the interest of her family to persist in the design of going on to Arkansas, rather than to turn towards Texas, which Mrs. Strong wished to do, when Whatley, her brother, declined to accompany Strong's family, and his son, to Arkansas. Alfred Harrell, to whom, with Strong, the conversation was directed, states particularly that no specific agreement was entered into between the parties, in his presence, fixing or recognizing the amount of the lands that Strong was to have of the locations to be made by him with Whatley's warrants, but that it was some interest, which Whatley represented would be worth more to Strong than any other arrangement he could make, but that what it should be, seemed to be left to the honor of Whatley. Elizabeth Huey simply refers to a promise she heard Whatley make to Strong at Harrell's, that the latter should have one-half of the lands for laying the warrants.

Upon the most favorable construction that can be put on this testimony, it is left in doubt what the interest of Strong was to be in the lands which he should locate. Harrell and his wife are the more credible witnesses, from their disinterested position, and we think the better conclusion, from the testimony of these four witnesses, and from that of Lee, is, that Strong's interest in the lands he located in Whatley's name with his

land warrants, is an uncertain, indefinable, unascertainable interest.   And considering that the burden of proof rested upon Strong, we hold that the issue made by the bill and answer, as to the extent of Strong's interest, is not maintained for Strong, even by his own testimony.   Yet if we were inclined to the contrary opinion, and could say that the evidence of the son and daughter of Strong defined the interest which the evidence of Harrell and his wife, and of Lee, left in uncertainty, the agreement of the bill could only be hesitatingly declared, it could not possibly be held to be established in the clear and unequivocal way, in which a contract must be proved before a court of equity will decree its specific performance.   The principle applicable to cases of this kind, is so elementary that a reference to authorities for its support is unnecessary, and would be inappropriate, and we, therefore, merely allude to *Baker vs. Hollobaugh*, 15 *Ark.* 322, and to *McNeill vs. Jones*, 24 *Ark.* 281, in recognition of the doctrine.

When the whole testimony, that of the defendant, with what has been remarked upon, is taken into view, we cannot have any doubt but that Strong, the plaintiff, has failed to presen such a case as entitles him to the relief he seeks, by an apportionment of the lands, mentioned in the bill, between himself and the defendant.   If, owing to his own careless method of doing business, or to an indiscreet reliance upon Whatley's honor, he has lost an interest he supposed to be valuable, the courts cannot dispense with the rules of law which require all suitors to maintain their suits in order to obtain the relief to which their pleadings, if proven to be facts, would entitle them. But we, by no means, express any opinion that the merits of this case incline to the one side or the other, or that the plaintiff is precluded from relief by the harsh operation of a legal principle.   We have attentively examined the three hundred pages of testimony embodied in the case, and are satisfied with the result of our examination.

Waiving the legality of a decree for compensation to Strong

for locating the lands, which would be included in the prayer for general relief, if in the case at all, we need only say that for the mere labor of locating the lands, Strong seems to have been allowed in the settlement, what the proof would give him, what he claimed to be a compensation.

The conclusion above announced, makes it unnecessary to examine the other points in the case.

The decree of the court below is reversed, the bill of the plaintiff, the appellee, must be dismissed.